**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

KY LY CHIN,

Petitioner,

v.

MARKWAYNE MULLIN et al.,

Respondents.

Case No. 5:26-CV-04942-DFM

ORDER DENYING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. 12)

## I. INTRODUCTION

Petitioner Ki Ly Chin is detained at the Adelanto ICE Processing Center under a 2004 final order of removal to Cambodia. She petitions for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the lawfulness of her re-detention and continued custody, see Dkt. 1 ("Petition"), and applies ex parte for a temporary restraining order directing her immediate release or, alternatively, barring Respondents from removing her from the United States or transferring her outside this District, see Dkt. 12 ("Application"). Respondents oppose and have answered the Petition in the same filing. See Dkt. 15 ("Answer"). The Court has temporarily enjoined Respondents from transferring or removing Petitioner pending resolution of the Application. See Dkt. 14 ("Interim Order").

The Court concludes that this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Application is **DENIED** and the Interim Order is **VACATED**.

## II. BACKGROUND

Petitioner is a native and citizen of Cambodia; Respondents' records reflect that she was admitted to the United States as the child of a refugee on May 25, 1982. See Answer, Ex. 5 ("Form I-213"). In 2001, she was convicted in California of a controlled-substance offense under Health and Safety Code section 11378. See id.; Petition ¶ 1. An immigration judge ("IJ") ordered her removed to Cambodia on June 3, 2004, and the Board of Immigration Appeals ("BIA") dismissed her appeal that September. See Answer, Ex. 1; Form I-213. She was not removed. She was released on an order of supervision and reported to Immigration and Customs Enforcement ("ICE"). See Petition ¶ 8. ICE arrested her in August 2025; she was re-released on an order of supervision on or about September 19, 2025. See id. ¶ 9; Answer, Ex. 6 ("Revocation Notice").[1]

---

[1] The background of Petitioner's August 2025 arrest and September 2025 release are detailed in an order issued in Petitioner's prior proceeding:

> On August 14, 2025, Ms. Chin was taken into custody without notice and held at the Adelanto Detention Center. After being held for over a month, Ms. Chin was released on September 19, 2025, after it was discovered that she was a class member in the district court case Chhoeun v. Marin, 17-cv-01898-JWF-GJS, and subject to the Judgement and Permanent Injunction entered in that case. A copy of the Permanent Injunction attached to the Application states that Class Members, who are Cambodian citizens with removal orders, may only be re-detained for deportation after being provided with a notice at least 14 days in advance of re-detention.

On September 24, 2025, the Superior Court of California granted Petitioner's unopposed motion to vacate the conviction or convictions underlying her removal order. See Petition ¶ 10. Petitioner's motion to reopen, filed with the BIA on that basis, remains pending. See Petition ¶ 36. The government of Cambodia issued a travel document valid through December 22, 2026. See Answer, Ex. 2 ("Travel Document"). On July 24, 2026, ICE gave Petitioner written notice under the settlement in Chhoeun v. Quinonez, No. 8:17-cv-01898 (C.D. Cal.), that it intended to re-detain her no earlier than fourteen (14) days later. See id., Ex. 3.

The BIA denied Petitioner's request for a stay of removal on August 25, 2026. See id., Ex. 4. The next day, ICE detained her when she reported for a scheduled check-in and served her with a warrant of arrest, an ICE Form 71-091 Notice of Revocation of Release, and an ICE Form 71-090 Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i). See Revocation Notice. The Revocation Notice, signed by an Assistant Field Office Director, states that Petitioner's release is revoked under 8 C.F.R. § 241.13(i); that changed circumstances establish a significant likelihood of removal in the reasonably foreseeable future; and that ICE has obtained a travel document and scheduled removal to occur no later than December 22, 2026. See id. It gave notice of an informal interview to be held that same day. See id. The accompanying Form 71-090, signed by an interviewing officer, records that the interview was conducted and that Petitioner provided neither a written statement nor documents. See id.

Petitioner filed the instant Petition on August 27, 2026. On August 31, 2026, ICE served her with notice that she was scheduled for transfer outside

Chin v. Noem, Case No. 8:25-02359-MWF (DFMx), Dkt. 11 at 2 (C.D. Cal. Oct. 20, 2025) (record citations omitted).

this District on or after September 5, 2026, to effectuate her removal. See Dkt. 10-1. Respondents state that she was to be transferred to a staging facility that day in advance of a charter flight scheduled for September 8, and that the transfer was paused upon entry of the Interim Order. See Answer at 2.

## III. LEGAL STANDARD

A temporary restraining order is an extraordinary remedy. The movant must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm absent relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding-scale formulation, serious questions going to the merits and a balance of hardships tipping sharply in the movant's favor can suffice, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). All four requirements must still be satisfied. See id.

## IV. DISCUSSION

The Application seeks two forms of relief: a request for release and/or a request to bar removal and transfer.

### A. The Court Lacks Jurisdiction to Bar Petitioner's Removal

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). It is construed narrowly, reaching only those three discrete actions, see Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999), but it does bar judicial review of a claim seeking to enjoin removal, see Rauda v. Jennings, 55 F.4th 773, 777 (9th Cir. 2022) ("No matter how [petitioner] frames it, his challenge is

to the Attorney General's exercise of his discretion to execute [petitioner's] removal order, which we have no jurisdiction to review.").

In Rauda, the petitioner was subject to a final removal order, had a motion to reopen pending before the BIA, had been denied an agency stay, and asked a district court to enjoin his removal until both the BIA ruled on his motion and the court ruled on his habeas petition. 55 F.4th at 776. The Ninth Circuit held that section 1252(g) deprived the district court of jurisdiction, because "[t]he execution of his removal order is precisely what [petitioner] challenges." Id. at 777. Challenging the timing of removal does not avoid the bar, which "does not include any temporal caveats": "the discretion to decide whether to execute a removal order includes the discretion to decide when to do it." Id. (quoting Tazu v. Att'y Gen. United States, 975 F.3d 292, 297 (3d Cir. 2020)).

Petitioner's request to bar her removal pending resolution of the Petition and her motion to reopen seeks the relief that Rauda held a district court cannot grant. Petitioner responds that she seeks no such relief, see Dkt. 12-2 ("Mem.") at 2; Dkt. 13 ("Response") ¶ 2, but the Application asks the Court to enjoin Respondents "from removing Petitioner from the United States," Application at 2, and the prayer for an order "barring Petitioner's removal," Petition at 12. To the extent Petitioner seeks an order barring her removal, that request is DENIED for lack of jurisdiction.

The alternative request to bar transfer outside this District also fails. Petitioner identifies no injury from transfer outside this District that is distinct from removal itself. Indeed, the transfer she seeks to prevent is, on this record, a step in executing the removal order. See Answer at 2.

Respondents invoke 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), which make a petition for review the exclusive means of reviewing a removal order and channel into that review "all questions of law and fact . . . arising from any

action taken or proceeding brought to remove an alien." See Answer at 8. Those provisions do not bar Petitioner's detention claims. See Jennings v. Rodriguez, 583 U.S. 281 (2018). And Section 1252(g) does not bar Petitioner's request for relief in the form of release from custody. Respondents' argument that release is barred because it "would obviously block her removal," Answer at 2, makes intuitive sense but does not necessarily follow. Otherwise, any claim under Zadvydas v. Davis, 533 U.S 678 (2001), would be barred whenever the Government had made progress toward removal.

**B. Petitioner Has Not Show a Likelihood of Success on the Merits of Her Request for Release**

Petitioner argues that her re-detention violates 8 C.F.R. § 241.13(i), see Petition at 8-9; that due process requires a hearing before a neutral arbiter before her re-detention, see id. at 9-10; and that continued detention is not authorized under 8 U.S.C. § 1231(a)(6) and Zadvydas, see id. at 10-11; see also Application at 2 ("Petitioner is likely to succeed on the merits of her Petition, which establishes that Respondents' re-detention of Petitioner violates 8 C.F.R. § 241.13(i), the Due Process Clause of the Fifth Amendment, and 8 U.S.C. § 1231(a)(6).").

Revocation under 8 C.F.R. § 241.13(i). The agency "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). As to procedure, "[u]pon revocation, the alien will be notified of the reasons for revocation," and the agency "will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3). The non-citizen may submit evidence that removal is not significantly likely or that she has not violated the order of

supervision, and "[t]he revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." Id.

Petitioner alleges that Respondents gave no statement of the specific reasons for her re-detention beyond the July 2026 Chhoeun notice and that no post-detention interview occurred or was offered. See Petition ¶¶ 13, 31. The record strongly suggests otherwise. The Revocation Notice states the regulatory basis, identifies the changed circumstance, and is corroborated by the Travel Document itself. Petitioner's contention that no interview occurred also appears contradicted by the record. The Form 71-090 indicates that an interview took place, although the space for Petitioner's oral response is blank. See Revocation Notice. Petitioner offers no declaration describing what occurred on August 26, 2026. Ultimately, the burden on this Application rests on the movant, and she has not met it. The Court finds that Petitioner has not shown a likelihood of success on the merits of this argument.

Due process. The Due Process Clause protects a person's interest in conditional liberty once she has been released. In Morrissey v. Brewer, 408 U.S. 471, 482 (1972), the Supreme Court held that such liberty "is valuable and must be seen as within the protection of" the Clause and that its termination "calls for some orderly process." The Court finds that Petitioner has a protected interest in her continued release.

What process was due is assessed under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), weighing (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the Government's interest, including the burdens of added process. The test is flexible and must account for the heightened governmental interest in the immigration detention context, and the process

actually available bears on the strength of the private interest. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

The private interest is substantial: Petitioner had been at liberty under supervision for the year preceding her re-detention and for years before her 2025 detention. The Government's interest is likewise substantial: executing final removal orders, and doing so without procedures that impede execution once travel documents and transportation are secured.

The second factor is contested. The procedure set out in section 241.13(i) is conducted within the agency. No neutral decisionmaker reviews the determination, and no IJ has custody jurisdiction once a removal order is final. But the risk of error must be measured against the determination actually made. ICE had obtained a travel document and scheduled removal, neither of which are contestable or in dispute. The probable value of an additional neutral hearing is therefore low, because the fact justifying revocation is not in dispute. Weighing the three factors, Petitioner has not shown a likelihood of establishing that the process she received was constitutionally inadequate.

Petitioner cites Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017), which affirmed a class-wide injunction requiring immigration officials setting bond under 8 U.S.C. § 1226(a) to consider financial ability and alternative conditions of release. It does not address revocation of an order of supervision, detention under section 1231, or the process due before re-detention.

Section 1231(a)(6) and *Zadvydas*. Because the removal order is final and the removal period has expired, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6), which permits but does not require continued detention for certain categories of noncitizens. Zadvydas construed that provision "in light of the Constitution's demands" to permit detention only for "a period reasonably necessary to bring about [the] alien's removal." 533 U.S. at 689-90. Six months is "presumptively reasonable"; after that, once the noncitizen gives

good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must rebut or release her. See id. at 701.

Petitioner's Zadvydas claim fails. Petitioner's Application makes it clear that removal is imminent, as a travel document valid through December 2026 has issued and a charter flight was scheduled for September 8, 2026. Petitioner cannot show that removal is not significantly likely in the reasonably foreseeable future when the record establishes that it is in progress. She argues that removal is not likely "in any legally cognizable sense" because the underlying conviction was vacated and the motion to reopen is pending. See Petition ¶ 36. But that goes to the legal validity of the removal order rather than the prospect of effectuating it, and Zadvydas looks at the latter. The Court thus finds that Petitioner has not shown a likelihood of success on the merits of this argument.

Because Petitioner has not shown a likelihood of success on any of her re-detention claims, her Application for a TRO directing her immediate release is **DENIED**.

## C. The Interim Order

The Interim Order enjoined transfer and removal and provided that the restraint would remain in effect until the Court resolved the Application or ordered otherwise. Because the Court lacks jurisdiction to enjoin execution of the removal order, and because this Order resolves the Application, the restraint must be vacated.

This permits Respondents to proceed with Petitioner's removal, which may render the Petition moot before it is decided. Section 1252(g) contains no exception permitting a district court to restrain execution of a removal order to preserve its own jurisdiction over a pending habeas petition, and Rauda rejected an attempt to obtain that relief in strikingly similar circumstances.

Petitioner's motion to reopen remains pending before the BIA, and her presence is not required for its adjudication.

The underlying Petition remains pending. Nothing in this Order resolves it or expresses a view on the merits of any claim it raises.

## V. ORDER

For the foregoing reasons, Petitioner's Ex Parte Application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Dkt. 12) is **DENIED**. The Interim Order entered on September 2, 2026 (Dkt. 14) is **VACATED**.

The briefing schedule for the Petition remains in place.

Date: September 4, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge